WADE, et al. *v.*
SHAMROCK FUEL & OIL SALES OF LOUISIANA, INC., et al.

No. 42663          May 6, 1963          152 So. 2d 449

*T. E. Davidson,* Jackson; *Melvin, Melvin & Melvin,* Laurel, for appellant.

*Boyd, Holifield & Harper,* Laurel, for appellee.

JONES, J.

Wade sued the appellee for damages for personal injuries alleged to have been caused by the negligence of the appellees, and when the Circuit Court of Jones County excluded his testimony and directed a verdict for appellees, he appealed to this Court.

Appellant was a white man about 45 years of age, married, and with a family. He had completed the ninth grade of school and for about fifteen years had followed the trade of an automobile mechanic and body man. As a mechanic he operated a wrecker, repaired automobile bodies, and work of that kind. He had also worked for about six months in the oil fields as a roughneck and he had been reared on a farm and had farmed for a number of years. So far as this record is concerned, he was a man of normal intelligence and with the experience hereinbefore stated.

On or about April 24, 1961, while employed by Roy Rogers, who did business as Roy Rogers Body Shop at Laurel, Mississippi, he was instructed by his employer to take a wrecker, go to the premises of Shamrock Fuel & Oil Sales near Laurel, and tow a wrecked truck to Rogers' Shop where it might be repaired. When he arrived at Shamrock's place of business he was shown the truck, which was a light green, two-ton, International

truck with a flat-bed body. The flat-bed had twelve inch sidings. There was a fuel tank on the bed of the truck, which tank was about four feet in diameter and twelve to fourteen feet long, built on a permanent set of. skids. The tank was welded to four-inch iron pipes as skids and had braces or reinforcements from one end of the tank to the other. Some of the reinforcements stuck out about three inches on each side of the skids. The truck on the bed of which the tank was setting had been wrecked and would not run. Mr. Wade was requested to pick up the front part of the truck and move it from one side of the building to the other and set it beside a tank there. According to him, his employer had said nothing to him about the tank.

After so moving it, he was requested by Shamrock's employee to raise the front end of the truck, on which the tank set, as high as he could with his wrecker in order that the tank might slide out. It was desired that the tank be removed from the bed of the truck so the truck could be taken to Rogers' Shop and repaired. When he raised the front of the truck, the tank did slide but caught and hung on one of the back corners of the body. Wade was lifting the front of the truck with wenches situated on his wrecker, and when the tank slid and caught, the wench cable settled about six inches on the drum. Wade was then told to raise it up as high as possible, and using the wench clutches on each side of the back end of his truck, he raised it as high as he could.

Mr. Clinton, an employee of Shamrock, was present at the time Wade arrived, and while they were working another employee of Shamrock, a Mr. Turner, came, and the two Shamrock employees got a piece of pipe about three or four inches in diameter and about ten feet long. They placed this pipe against the bracings or skids, undertaking to prise the tank away from where it was stuck. The tank was not moving and Mr. Clinton

called to Wade to hurry and come help prise it over. There was no evidence of any emergency. Wade left his clutches and while Mr. Clinton and Mr. Turner were pushing on the pipe, he got on the opposite side and began to pull on it. He said that while he was pulling on it the pipe slipped and the force of the pipe and the weight of it threw him back. He said he was instructed by Mr. Clinton to pull on the pipe. He received various serious injuries. He settled with the insurance carrier of his employer under the workmen's compensation law and filed this suit as a third party action in which the insurance carrier intervened. He said when the pipe slipped he fell backwards to the ground and sat down more or less on his right hip. He felt a severe pain in his back, and could not get up for about three minutes. He finally managed to get up, but said his right leg was paralyzed, and described his injuries. When the pipe slipped, one end of the tank skids hit the ground and the other was setting up on the back of the wrecked truck. Wade got in his truck and pulled out from under the tank. He thought the tank was about one-half to two-thirds full of something, but he did not know what kind of liquid it was. He estimated that it weighed about 6,000 pounds.

Only one assignment of error is argued and that is that the court erred in granting a peremptory instruction against plaintiff. Plaintiff introduced two men who were experienced in oil field work and in the moving of heavy objects, and in unloading of objects such as the tank in question. It was their opinion that the way it was being taken from the truck was not a safe way; that the safe way was by the use of a gin-pole or a pinch bar. They testified they had never seen one removed in this manner, however, both of them stated that whatever danger there was was perfectly obvious to any man of normal intelligence.

Wade testified that he was looking at the men when they obtained the four-inch drill pipe, saw them using it for a prise, and where they were using it, and that when they called he went back and started pulling on the pipe.

At the conclusion of plaintiff's evidence, the defendant made a motion to exclude the testimony offered by plaintiff and directed the jury to find peremptorily for the defendant. This motion was sustained.

Wade was an employee of an independent contractor and, of course, was a business invitee to the place of business of Shamrock.

Appellants cite the case of Nowell v. Harris, et al., 219 Miss. 363, 68 So. 2d 464. In the *Nowell* case, the plaintiff was a minor. Nowell, driving a truck for Hayes, hauled lumber from the mill of Hayes to the yard of Harris. Ordinarily the servants of Harris would place a binder about the load of lumber and lift the same from the truck and place it on the ramp. However, on this day, only one employee was on duty at Harris' yard. That was the foreman. When Nowell arrived he was told by the foreman to go to a nearby stack, unloosen the chain binder around it, and place the chain binder around the lumber on his truck so that the loaded lumber might then be lifted and placed upon the ramp. Nowell undertook so to do and when he loosed the binder, the stack of lumber fell upon him. Nowell was inexperienced in this particular work and said he did not notice anything indicating to him that the lumber had not been properly stacked. The foreman testified that if the lumber had been properly stacked it would not have fallen. In that case the Court held that the question of liability or non-liability of Harris was a question for the jury.

Reliance is also placed upon the case of McGill v. Clark, 146 So. 2d 338, but a reading of this case will

disclose that the injured party had no knowledge of the negligent actions of the employee of McGill.

In the present case we have a man 45 years of age who had been working in and around wreckers, automobiles, drilling rigs, and farms for many years. He testified positively that he saw what the people were doing; that he saw them get the drill pipe and begin pushing with it in an effort to loosen the tank. As a matter of fact, he had raised the body of the truck so that the tank was caused to slide and hang. His own expert witnesses testified that the danger, if any, was perfectly obvious. There was nothing concealed; there was no evidence of any knowledge on the part of Shamrock's people superior to that of appellant. The drill pipe that slipped was a simple tool.

Considering appellant's testimony as true, along with all reasonable inferences favorable to him, that might be drawn from it, we are unable to find any actionable negligence under the circumstances shown. The learned judge below so held and the case is therefore affirmed.

Affirmed.

*McGehee, C. J., and Kyle, Gillespie, and Rodgers, JJ.,* concur.